DAVID SIMONTON (SBN 199919)
david.simonton@dentons.com
DENTONS US LLP
1999 Harrison Street, Suite 1210
Oakland, CA 94612
P +1 415 882 5000
F +1 415 882 0300

Attorneys for Defendant and Counter-Claimant
Aspen Specialty Insurance Company
only with respect to policies
ERAHAQL17, EXAHAQM17, ERAHAQL18,
EXAHAQM18, ERAHAQL19 and EXAHAQM19

Alexander E. Potente (SBN 208240)
alex.potente@clydeco.us
Brian D. Harrison (SBN 157123)
brian.harrison@clydeco.us
CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801

Attorneys for Defendant and Counter-Claimant
Aspen Specialty Insurance Company
only with respect to policies
ERAHAQL20, EXAHAQM20, EXAHAQM21
EXAHAQM22 and EXAHAQM23

[Additional Counsel Listed After Signature Page]

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAESARSTONE USA, INC. f/k/a U.S. QUARTZ PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.; AMERICAN FIRE AND CASUALTY COMPANY; ASPEN SPECIALTY INSURANCE COMPANY; COLONY INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; CONTINENTAL INSURANCE COMPANY; GOLDEN EAGLE INSURANCE CORPORATION; | Case No. 2:25-CV-09582-MRA-MAA <br><br> Assigned to the Honorable Mónica Ramírez Almadani, Courtroom 9B <br><br> **NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS BY ASPEN SPECIALTY INSURANCE COMPANY; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:      April 14, 2026 <br> Time:      10:00 am <br> Place:     Courtroom 9B |

- 1 -

HARTFORD CASUALTY INSURANCE COMPANY; NAVIGATORS SPECIALTY INSURANCE COMPANY; PEERLESS INSURANCE COMPANY; VALLEY FORGE INSURANCE COMPANY; WAUSAU BUSINESS INSURANCE COMPANY; and DOES 1-15,

Defendants.

_____

ASPEN SPECIALTY INSURANCE COMPANY,

Counterclaimant,

v.

CAESARSTONE USA, INC. F/K/A U.S. QUARTZ PRODUCTS, INC.,

Counter-Defendant.

*[Filed concurrently with Declaration of Jonathan D. Henry and Proposed Order]*

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

- 2 -

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 14, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9B of the United States District Court for the Central District of California, located at Ronald Reagan Federal Building and United States Courthouse, before the Honorable Mónica Ramírez Almadani, Defendant/Counterclaimant Aspen Specialty Insurance Company ("Aspen") will, and hereby does, move under Federal Rule of Civil Procedure 12(c) for partial judgment on the pleadings against Plaintiff/Counter-Defendant Caesarstone USA Inc. f/k/a U.S. Quartz Products, Inc. ("Caesarstone") on Count IV of Aspen's Counterclaim.

Pursuant to Local Rule 7-3, this motion is brought after the moving parties met and conferred by video conference on January 30, 2026.

This motion is based upon this notice, the Memorandum of Points and Authorities, the Declaration of Jonathan D. Henry, Esq., together with exhibits thereto, with the operative pleadings on file with the Court, and any other evidence or argument as the Court may consider in connection with this motion.

Dated: February 27, 2026

Respectfully submitted,

DENTONS US LLP

By: */s/ Jonathan D. Henry*
Jonathan D. Henry (admitted pro hac vice)

Attorneys for Defendant and Counterclaimant
ASPEN SPECIALTY INSURANCE COMPANY
only with respect to policies
ERAHAQL17, EXAHAQM17, ERAHAQL18,
EXAHAQM18, ERAHAQL19 and EXAHAQM19

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

- 3 -

CLYDE & CO US LLP


By: */s/ Alexander E. Potente*
     Alexander E. Potente

Attorneys for Defendant and Counterclaimant
ASPEN SPECIALTY INSURANCE COMPANY
only with respect to policies
ERAHAQL20, EXAHAQM20, EXAHAQM21,
EXAHAQM22 and EXAHAQM23

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

- 4 -

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................................... 8

II.  FACTUAL BACKGROUND ...................................................................................... 10

    A.  Long-Tail Silica Claims ................................................................................... 10

    B.  Insurance Claim and Aspen's Primary Policies ....................................... 11

III.  LEGAL STANDARD .................................................................................................. 13

IV.  LEGAL ARGUMENT ................................................................................................. 14

    A.  Part A of the Deemer Clause Deems There To Be One Occurrence Limit Available for the Silica-Related Claims For Any Claimant ................................. 14

    B.  Part B of the Deemer Clause Provides That There Is One Occurrence Limit Available for the Silica-Related Claims for All Claimants................................. 18

    C.  The Court Should Reject Caesarstone's Anticipated Reliance on Extrinsic Evidence To Modify the Aspen Policies................................................................. 20

V.  CONCLUSION .............................................................................................................. 22

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abex Corp. v. Maryland Cas. Co.*,
 790 F.2d 119 (D.C. Cir. 1986) ........................................................................ 16

*ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*,
 17 Cal. App. 4th 1773, 22 Cal. Rptr. 2d 206 (1993) ...................................... 20

*AIU Ins. Co. v. Superior Ct.*,
 51 Cal. 3d 807 (1990) ..................................................................................... 20

*Am. Title Ins. Co. v. Lacelaw Corp.*,
 861 F.3d 224 (9th Cir. 1988) .......................................................................... 17

*Bank of the West v. Superior Court*,
 2 Cal.4th 1254 (1992) ..................................................................................... 14

*Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*,
 517 F. Supp. 2d 1089 (D. Minn. 2007) ........................................................... 16

*Chavez v. U.S.*,
 683 F.3d 1102 (9th Cir. 2012) .................................................................... 13, 14

*Chemstar, Inc. v. Liberty Mut. Ins. Co.*,
 797 F. Supp. 1541 (C.D. Cal. 1992), aff'd, 41 F.3d 429 (9th Cir.
 1994) ................................................................................................................ 19

*Com. & Indus. Ins. Co. v. Chubb Custom Ins. Co.*,
 75 Cal. App. 4th 739 (1999) ...................................................................... 20, 21

*Ins. Co. of Pa. v. Cnty. of San Bernardino*,
 No. 16-cv-0128-PSG, 2017 WL 2903259 (C.D. Cal. Mar. 8, 2017),
 aff'd, 776 F. App'x 400 (9th Cir. 2019) .......................................................... 15

*Ironshore Specialty Ins. Co. v. Color Techniques, Inc.*,
 No. 1:23-cv-07526-JLR, 2024 WL 3634860 (S.D.N.Y. Aug. 1,
 2024) ................................................................................................................ 15

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Lee v. State Farm Gen. Ins. Co.*,
   No. 22-cv-00548-LB, 2024 WL 779606 (N.D. Cal. Feb. 26, 2024),
   aff'd, No. 24-1840, 2025 WL 1201876 (9th Cir. Apr. 25, 2025) ...................... 15

*Madera Grp., LLC v. Mitsui Sumitomo Ins. USA, Inc.*,
   545 F. Supp. 3d 820 (C.D. Cal. 2021) .................................................................. 20

*Mays v. Wal-Mart Stores, Inc.*,
   354 F. Supp. 3d 1136 (C.D. Cal. 2019) ............................................................... 14

*Palacin v. Allstate Ins. Co.*,
   119 Cal. App. 4th 855 (2004) ............................................................................... 22

*Penn-Star Ins. Co. v. Zenith Ins. Co.*,
   730 F. Supp. 3d 1053 (E.D. Cal. 2024) ............................................................... 15

*St. Paul Fire & Marine Ins. Co. v. Coss*,
   80 Cal.App.3d 888 (1978) .................................................................................... 14

*State of California v. Cont'l Ins. Co.*,
   55 Cal. 4th 186 (2012) .................................................................................... 14, 15

*Texas Farmers Ins. Co. v. Lexington Ins. Co.*,
   No. 06-cv-08220-DDP, 2008 WL 11334592 (C.D. Cal. Apr. 21,
   2008), aff'd, 380 F. App'x 604 (9th Cir. 2010) ............................................ 15, 16

*TIG Ins. Co. v. Smart Sch.*,
   401 F. Supp. 2d 1334 (S.D. Fla. 2005) ................................................................ 16

*Upper Deck Co. v. Panini Am., Inc.*,
   533 F. Supp. 3d 956 (S.D. Cal. 2021) ................................................................. 11

*USF Ins. Co. v. Clarendon Am. Ins. Co.*,
   452 F. Supp. 2d 972 (C.D. Cal. 2006) ................................................................. 16

**Other Authorities**

Federal Rules of Civil Procedure
   Rule 12(b)(6) ........................................................................................................ 14
   Rule 12(c) ..................................................................................................... 8, 13, 14

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant/Counterclaimant Aspen Specialty Insurance Company ("Aspen") submits this memorandum in support of its motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  This action involves plaintiff/counter-defendant Caesarstone USA, Inc.'s ("Caesarstone") claims for insurance coverage from its insurers for underlying silica-related bodily injury claims (the "Claims").  The parties dispute coverage for several reasons.  This motion concerns the extent of Aspen's coverage obligations to Caesarstone.

Specifically, Aspen seeks judgment in its favor and against Caesarstone on Count IV of its Counterclaim, which concerns the application of the Aspen policies' anti-stacking "deemer" provisions (the "Deemer Clause").  Aspen seeks a judgment declaring that the Deemer Clause limits Aspen's insurance coverage obligations for the Claims to the first policy period (2017-18) and a single per-occurrence limit – a total of $16 million.[1]

This motion involves a straightforward application of unambiguous policy language.  When Caesarstone purchased insurance from Aspen between 2017 and 2021, those policies included a Deemer Clause with two parts – Part A and Part B. Part A deems all progressive bodily injury caused by exposure to the same harmful condition or substance to have happened in a single Aspen policy period.  Part B deems all such bodily injury to have happened in the first Aspen policy period and makes all loss resulting from such bodily injury subject to one occurrence limit.

Taken together, these Parts mean that regardless of the number of claimants, the number of triggered Aspen policies, or the length of exposure, the Policies deem

---

[1] Aspen denies that it has any obligation to defend and indemnify Caesarstone for the Claims for the reasons set forth in its reservations, answer and counterclaim.  This motion does not address the merits of Aspen's defenses, and Aspen expressly reserves all rights, without limitation.

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

all loss to have taken place only in the first Aspen policy period, subject to the per occurrence limits available in that first policy period – $1 million primary and $15 million excess. This comports with the purpose of the Deemer Clause, which is to prevent an insured from "stacking" coverage – *i.e.*, the insured cannot create one "uber-policy" by accessing multiple limits from multiple policies issued by the same carrier, when the injuries arise from continuous or repeated exposure to the same harmful conditions or substances.

That is exactly the situation here, and Caesarstone's pleadings admit the facts necessary for judgment on the pleadings. Caesarstone seeks insurance coverage from Aspen and other insurers for hundreds of underlying lawsuits that all allege the same thing – stoneworkers allegedly contracted progressive respiratory and other bodily injuries from their exposure to the toxins in Caesarstone's products. Caesarstone admits that all Claims are "continuous or progressive" bodily injury. (FAC ¶ 22.)[2] Caesarstone also admits that all Claims arise from the same or related harmful conditions and substances: "exposure to silica and other substances over many years of stone cutting" and Caesarstone's alleged failure to provide adequate warnings. (FAC ¶¶ 1, 17-22.) Applying the Deemer Clause to these allegations leads to only one conclusion – if Caesarstone is entitled to coverage at all, it is limited, at most, to the $16 million total limits of the first Aspen policy period.

Caesarstone implicitly acknowledges that this is how the Aspen policies work. Indeed, Caesarstone itself refers to the Deemer Clause as a "Non-Cumulation Clause" – *i.e.*, a policy provision that prevents the cumulation of multiple limits. (FAC ¶¶ 48-50, 80-81.) Caesarstone tries to avoid the application of the Deemer Clause by arguing that an alleged "*pro rata*" defense cost share agreement between its insurers somehow amends the policies. However, this

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

---

[2] "FAC" refers to Caesarstone's First Amended Complaint, located at docket number 6-1 at pages 35-70.

alleged agreement has no bearing on the interpretation of the Deemer Clause because it is extrinsic to the policies and post-dates the negotiation, underwriting, sale, delivery and acceptance of the policies by several years.  Caesarstone cannot use this extrinsic evidence to re-write the plain and unambiguous Deemer Clause.

For these reasons, as more fully stated below, the Court should grant Aspen's motion for partial judgment on the pleadings and enter judgment in Aspen's favor on Count IV of Aspen's counterclaim.

## II.   FACTUAL BACKGROUND

### A.   *Long-Tail Silica Claims*

This insurance coverage action arises out of hundreds of silica bodily injury claims asserted by fabricators and other stoneworkers against Caesarstone (the "Underlying Lawsuits").  (FAC ¶ 1, Ex. A.)  Each claimant alleges that they worked with Caesarstone products and were exposed to dangerous levels of silica dust from those products without receiving proper warnings, training or safety requirements, and that such exposure resulted in bodily injury – including silicosis and death.  (*Id.* at ¶¶ 18, 20-21.)  As Caesarstone itself notes, all of the claimants allege "continuous or progressive injury" arising from their exposure to silica-containing Caesarstone products.  (*Id.* at ¶ 22.)

The claimants all seek to hold Caesarstone liable for its alleged misconduct in distributing these silica-containing stone products and for failing to provide adequate warnings, among other things.  They assert theories of negligence, failure to warn, design defect, fraudulent concealment and unfair trade practices.  (*Id.* at ¶ 19.)  They seek economic and non-economic damages and punitive damages.  (*Id.*)

Per Caesarstone's First Amended Complaint, the claimants allegedly were first exposed in January 1980, and they allege "that their injuries continued long after their first alleged exposure to the harmful substances."  (*Id.* at ¶ 22.)  Exposures allegedly occurred during all of the Aspen policy periods.

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

### B.    *Insurance Claim and Aspen's Primary Policies*

Caesarstone purchased insurance from multiple insurers (including Aspen), and in this action Caesarstone seeks coverage for its defense and indemnification in the underlying silica-related claims from all of its insurers, beginning in 1999.  (*Id.* at ¶ 23, Ex. B.)  Caesarstone began purchasing insurance from Aspen in 2017.

Aspen issued primary liability insurance policies to Caesarstone for four policy years, from June 16, 2017, to April 1, 2021, with limits of $1 million per occurrence and $2 million in the aggregate (the "Primary Policies").  (*Id.* at ¶ 23, Ex. B; CC ¶ 18.)[3]  Aspen also issued four first level excess policies to Caesarstone for the same policy period each with a $15 million aggregate limit excess of the primary policies (the "Excess Policies") (together with the Primary Policies, the "Policies").  (FAC ¶ 23, Ex. B; CC ¶ 18.)[4]

The Primary Policies contain materially identical terms relevant to this motion.  Aspen agreed in the relevant coverage section 1.a to pay "those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage that takes place during the policy period and is caused by an occurrence in the coverage territory."  (*Id.* at ¶ 24; *see, e.g.*, Henry Decl. Ex. 1 at 10.[5])  The Primary Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (CC ¶ 26; *See, e.g.*, Henry Decl. Ex. 1 at 41.)

---

[3] "CC" refers to Aspen's Counterclaim, located at docket number 41.

[4] Aspen also issued second level excess insurance policies from April 1, 2021, to April 1, 2024, which are not at issue in this motion.  (*Id.*; CC ¶ 19.)

[5] "Henry Decl." refers to the Declaration of Jonathan D. Henry, Esq., filed contemporaneously with this motion.  The Policies are attached to this Declaration at Exhibits 1 to 8.  The Court may consider the Policies on this motion because they are referenced in the pleadings.  *See Upper Deck Co. v. Panini Am., Inc.*, 533 F. Supp. 3d 956, 961 (S.D. Cal. 2021).

- 11 -

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

The Primary Policies contain the Deemer Clause, which defines the parties' rights and obligations when there are multiple policies and policy periods triggered by claims.  The Deemer Clause's Part A deems a claimant's bodily injuries to have happened only in a single Aspen policy period, and also provides a mechanism to determine which policy period that will be.  It states:

**MULTIPLE POLICIES, POLICY PERIODS – COVERAGES 1A–1D and 2A–2G**

A. **If there is progressive or indivisible bodily injury** . . . (including any continuation, change or resumption thereof) **that takes place over a period of days, weeks, months or longer and is caused by continuous or repeated exposure to the same, related, continuous or repeated general harmful conditions or substances** under Coverage 1A (CGL Bodily Injury and Property Damage) . . . :

    **1.** All such **bodily injury** . . . **shall be deemed to have taken place only on the date of first exposure to such general harmful conditions or substances** . . . , but

    **2. If: (i) the date of first exposure cannot be determined, or is before the inception date of the first policy issued by us** or our affiliate to you providing coverage substantially the same as that provided by this Policy for bodily injury . . . that takes place during the policy period, **and (ii) such bodily injury . . . continues, in fact, to take place during this policy period**, then **all such bodily injury . . . shall be deemed to have taken place during the policy period of the first such policy we or our affiliate issued to you**.

(Ex. 1 at 21-22 (emphasis added).)

Then, Part B deems all bodily injury loss arising from "the same, related, or continuous or repeated general harmful conditions or substance" to have taken place only in the first Aspen policy period.  It also provides that all such loss will be subject to only one per occurrence limit.  It states:

B. **If the same, related, continuous or repeated general harmful conditions or substances** . . . **result in bodily injury . . .** that takes place during the policy periods of different policies issued by us or our affiliate to you providing coverage substantially the same as that

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

- 12 -

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

> provided by this Policy for bodily injury . . . that takes place during the policy period: 1. **All such bodily injury . . . shall be deemed to have taken place only during the first policy period of such policies in which any of the bodily injury . . . took place; and 2. All loss resulting from all such bodily injury . . . shall be subject to the Each Occurrence or the Each Pollution Incident Limit applicable to the policy for such first policy period**.

(*Id.* at 22 (emphasis added).)

Taken together, the Deemer Clause provides that, whenever the "same, related, continuous or repeated general harmful conditions or substances" result in progressive bodily injuries, those injuries are deemed to have happened only in the first Aspen policy period, subject to one occurrence limit, regardless of the number of years or number of claimants. Thus, here, the only limits potentially available to Caesarstone for the Underlying Lawsuits are the primary and excess per occurrence limits in the 2017-2018 policy year.[6]

Aspen has defended certain Underlying Lawsuits subject to a reservation of rights and has made defense and indemnity payments while expressly reserving its rights to seek judicial determination of its rights and obligations. Aspen has also reserved its rights to seek reimbursement of the amounts it has paid. (CC ¶¶ 84, 112-113.) Aspen specifically reserved on the issue – and now seeks a declaration in this motion – that any potential coverage for the Claims is limited to Aspen's first policy period and a single per-occurrence limit. (*Id.* at ¶ 86.)

## III. **LEGAL STANDARD**

Judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), is proper when the moving party is entitled to a judgment as a matter of law. *See Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012). The standard applied on a

---

[6] The Excess Policies incorporate the Deemer Clause. They provide that they "follow all provisions, exclusions, limitations, and all other terms and conditions of the" Primary Policies and do not grant broader coverage than the underlying Primary Policies. (*See, e.g.,* Henry Decl. Ex. 2 at 10).

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

Rule 12(c) motion is essentially the same as that applied on motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because, under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.* (citations omitted). A Rule 12(c) motion "may thus be predicated on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim." *Mays v. Wal-Mart Stores, Inc.*, 354 F. Supp. 3d 1136, 1141 (C.D. Cal. 2019). The allegations of the non-moving party are accepted as true, and all inferences reasonably drawn from those facts must be construed in favor of the non-moving party. *See id.* However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion for judgment on the pleadings. *See Chavez*, 683 F.3d at 1108 (citations omitted).

## IV.    **LEGAL ARGUMENT**

### A.    **Part A of the Deemer Clause Deems There To Be One Occurrence Limit Available for the Silica-Related Claims For Any Claimant**

The Deemer Clause plainly and unambiguously prevents Caesarstone from stacking the Aspen policy limits with respect to any given claimant. The Court need look no further than the plain and unambiguous language of the Deemer Clause to reach this conclusion.

The interpretation of an insurance policy under California law is a question of law that is decided under settled rules of contract interpretation. *See State of California v. Cont'l Ins. Co.*, 55 Cal. 4th 186, 194 (2012). "While insurance contracts have special features, they are still contracts to which the ordinary rules of contract interpretation apply." *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1264 (1992). "If contractual language is clear and explicit, it governs." *Id.; see also St. Paul Fire & Marine Ins. Co. v. Coss,* 80 Cal.App.3d 888, 896 (1978) ("An insurance policy is a contract, and when the terms are plain and unambiguous, it is the duty of the court to hold the parties to such contract.").

- 14 -

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

The issue here is whether Caesarstone may "stack" all of its insurance limits together into one "uber-policy." *See Cont'l Ins. Co.*, 55 Cal. 4th at 200-01. An insured's ability to "stack" or accumulate policy limits comes into play when an occurrence triggers multiple policy periods. In that scenario, "each policy can be called upon to respond to the claim up to the full limits of the policy." *Id.*

However, "an insurer may avoid stacking by specifically including an 'antistacking' provision in its policy." *Id.* at 202. "[C]ontracting parties can write into their policies whatever language they agree upon, including . . . prohibitions on stacking." *Id.* Courts applying California law routinely enforce anti-stacking prohibitions. S*ee, e.g.*, *Lee v. State Farm Gen. Ins. Co.*, No. 22-cv-00548-LB, 2024 WL 779606, at *1 (N.D. Cal. Feb. 26, 2024), aff'd, No. 24-1840, 2025 WL 1201876 (9th Cir. Apr. 25, 2025) (affirming on appeal that the "district court correctly concluded that the Policy unambiguously prohibits stacking by its plain language"); *Ins. Co. of Pa. v. Cnty. of San Bernardino*, No. 16-cv-0128-PSG, 2017 WL 2903259 (C.D. Cal. Mar. 8, 2017), aff'd, 776 F. App'x 400 (9th Cir. 2019) (affirming on appeal that a non-cumulation provision in an insurer's three consecutive policies was an enforceable anti-stacking provision); *see also Penn-Star Ins. Co. v. Zenith Ins. Co.*, 730 F. Supp. 3d 1053 (E.D. Cal. 2024) (enforcing anti-stacking language in farm's commercial general liability and farm liability policies).

California law considers deemer clauses to be a type of anti-stacking clause. *See Texas Farmers Ins. Co. v. Lexington Ins. Co.*, No. 06-cv-08220-DDP, 2008 WL 11334592, at *5 (C.D. Cal. Apr. 21, 2008), aff'd, 380 F. App'x 604 (9th Cir. 2010).[7]

---

[7] Courts outside California routinely enforce deemer clauses as well. *See Ironshore Specialty Ins. Co. v. Color Techniques, Inc.*, No. 1:23-cv-07526-JLR, 2024 WL 3634860, at *1 n.1 (S.D.N.Y. Aug. 1, 2024) (applying deemer clause to multiple asbestos bodily injury claims and concluding that "only the first of the Ironshore EPIC Policies applies" because the clause deemed all progressive injury to have occurred in a single policy period and underlying plaintiffs alleged first exposure

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

Deemer clauses work by "deeming" a progressive or indivisible bodily injury caused by prolonged exposure over a long time period to have happened only in a single policy period, thereby limiting the policy limits available. *See Abex Corp. v. Maryland Cas. Co.*, 790 F.2d 119, 122 n.10 (D.C. Cir. 1986) ("This provision is called a deemer clause because it *deems* when injury occurs."). As this court previously held and the Ninth Circuit affirmed, "[t]he purpose of a 'deemer' clause is to prevent the stacking of claims, by assigning a claim to a single policy." *Texas Farmers*, 2008 WL 11334592, at *5, aff'd 380 F. App'x 604 (citation omitted). The effect "is to limit each occurrence to a single policy year." *Id.*; *see USF Ins. Co. v. Clarendon Am. Ins. Co.*, 452 F. Supp. 2d 972, 990-91 (C.D. Cal. 2006) (insurer had no coverage obligation in a progressive property damage case because the policy's deemer clause made "clear that progressive property damage that starts before the insurers' policy period, but continues into the period, does not trigger coverage").

Here, Part A of the deemer clause states that "**if there is <u>progressive</u> or indivisible bodily injury . . . that takes place over a period of days, weeks, months or longer and is caused by <u>continuous or repeated</u> exposure to the same, related, continuous or repeated general harmful conditions or substances,**" then it is "**deemed to have taken place only**" on the date of first exposure or the first date of the first policy. (*See, e.g.*, Henry Decl. Ex. 1 at 21-22 (emphasis added).) The unambiguous meaning of this language is that a claimant's progressive bodily injuries are combined such that only one policy limit is available, and that available

---

before the policy period); *Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*, 517 F. Supp. 2d 1089, 1099 (D. Minn. 2007) (enforcing clause and stating that clause at issue in the case was "designed to assign losses that occur over several policy periods to a single period for coverage purposes, thus preventing 'stacking' of policy limits"); *TIG Ins. Co. v. Smart Sch.*, 401 F. Supp. 2d 1334, 1348 (S.D. Fla. 2005) (enforcing the clause where multiple claimants asserted injuries and rejecting the insured's argument that the clause at issue "unreasonably limited the insurer's liability to the occurrence limit in one policy period even if [occurrence] extends over several policy periods").

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

limit is either: (i) the one in the policy period when the exposure first took place; or (ii) the first policy period, if the first date of exposure pre-dates the policies or cannot be determined. This means that these types of progressive injury claims will not trigger other later policy periods, and so the limits of those policy periods are not available to be "stacked" together.

Here, there can be no real dispute that Part A applies. In essence, there are only two requirements: 1) a "progressive injury," that 2) arises from "continuous or repeated exposure." Caesarstone's complaint demonstrates that these requirements are met here. For example, Caesarstone pleads:

> Each Underlying Plaintiff alleges that their **injuries continued long after their first alleged exposure** to the allegedly **harmful substances,** with the first exposure alleged to have occurred in January 1980. Courts often refer to claims of **continuous or progressive injury, like the Underlying Plaintiffs' alleged exposure to silica and other substances over many years of stone cutting**, as "long-tail claims."

(FAC ¶ 22 (emphasis added).) In other words, Caesarstone admits that the claimants allege 1) continuous or progressive injuries that 2) arise from their exposure to Caesarstone's products over many years.[8] The Claims are undeniably "progressive" bodily injury caused by continuous or repeated exposure to Caesarstone's alleged negligence (or worse) and failure to warn about its "silica and other substances over many years of stone cutting." (*Id.*) As Caesarstone notes, these are classic "long-tail claims," and they are precisely the kind of claims that fall within the Deemer Clause.

Applying these facts to Part A is straightforward. Part A of the Deemer Clause prevents stacking of multiple policies for progressive injury caused by the same

---

[8] Caesarstone's allegations in its complaint constitute judicial admissions that "have the effect of withdrawing" this fact from issue and "dispensing wholly with the need for proof of the fact." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.3d 224, 226 (9th Cir. 1988).

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

harmful substances or conditions.  It does so by "deeming" that the injury took place *only* at one time, thereby triggering only one policy period.

### B.    Part B of the Deemer Clause Provides That There Is One Occurrence Limit Available for the Silica-Related Claims for All Claimants

Part B of the Deemer Clause works in concert with Part A to confirm that there is only one per-occurrence limit available for the long-tail Claims.  Part B states that if bodily injury "results" from "the same, related, continuous or repeated general harmful conditions or substances" then:  (1) all such bodily injury "shall be deemed to have taken place **only during the first policy period** of such policies in which any of the bodily injury . . . took place;" and (2) "**all loss**" resulting from such bodily injury "**shall be subject to the Each Occurrence . . . Limit applicable to the policy for such first policy period**." (*See, e.g.*, Henry Decl. Ex. 1 at 22 (emphasis added).) In other words, Part B accumulates all bodily injury together into the first policy year and limits the losses – *i.e.*, settlement and judgments against Caesarstone – to one occurrence limit so long as the bodily injury results from "the same, related, continuous or repeated general harmful conditions or substances."

That condition is undeniably satisfied here, because the bodily injuries asserted in the Underlying Lawsuits all arise from the "**same**, **related**, **continuous** or **repeated** general harmful conditions or substances."  Each claimant alleges the same fundamental set of facts – years of exposure to Caesarstone's harmful products, accompanied by insufficient protection and warnings. (*See* FAC ¶ 17 ("[T]he Underlying Plaintiffs generally allege that they were exposed to silica dust, metals, volatile organic compounds and other allegedly harmful substances while cutting, fabricating and/or installing . . . countertops allegedly manufactured by . . . Caesarstone."); *id.* at ¶ 18 ("The Underlying Plaintiffs allege that while doing this work, they inhaled toxicologically significant amounts of silica dust, metal, volatile organic compounds, and other materials contained in" Caesarstone's products and

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

that "over time, they sustained various bodily injuries."); *id.* at ¶ 19 ("The Underlying Plaintiffs generally assert claims for negligence, failure to warn, design defect, fraudulent concealment, and unfair trade practices").)

These admissions by Caesarstone confirm that each claimant alleges, at a minimum, a bodily injury that arises from "related" harmful conditions or substances. And as noted above, that alone is sufficient to trigger Part B of the Deemer Clause.

The Ninth Circuit in *Chemstar* analyzed similar deemer language that provided that all "property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." *Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 797 F. Supp. 1541, 1546 (C.D. Cal. 1992), aff'd, 41 F.3d 429 (9th Cir. 1994). There, the policyholder's plaster product damaged 28 homes. The court enforced the deemer clause to conclude that there was only one limit available because, even "the 28 incidents of pitting involved different homes, claimants, sources of lime, and times does not preclude a finding that the incidents arose from the same underlying cause" – the manufacturer's product defect. *Chemstar*, 41 F.3d at 432-33.

Similarly here, the Underlying Lawsuits all assert bodily injury resulting from the same toxic substances in Caesarstone's products. The individual circumstances of a particular claimant's exposure do not preclude the finding that the incidents arose from the same harmful conditions and substances.

In fact, the policy language here is even more clearly dispositive than in *Chemstar* because, unlike in *Chemstar*, this Court need not determine what the "occurrence" is. Regardless of the number of occurrences, the Deemer Clause deems all injuries to be *subject to one occurrence limit*. Because the exposure here is alleged to have begun in 1980 – before Aspen's policy period – the Policies deem all bodily injury resulting from related general conditions or harmful substances to have taken place once during the first Aspen policy period. Accordingly, the Court

- 19 -

should declare that any coverage that Aspen might owe to Caesarstone for the Underlying Lawsuits bodily injury is limited to the single occurrence limit for the 2017-2018 policy period.

### C.   The Court Should Reject Caesarstone's Anticipated Reliance on Extrinsic Evidence To Modify the Aspen Policies.

As set forth above, the Policies include a Deemer Clause that plainly and unambiguously accumulates all injuries into the first Aspen policy period, subject to a single per occurrence limit.  The Court can and should hold that Aspen's coverage obligations are therefore limited accordingly simply by reading the Policies and the pleadings.

Under California law, when an insurance policy is clear and unambiguous, a court has no basis to rely on extrinsic evidence.  *See ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 22 Cal. Rptr. 2d 206 (1993).  "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.  Such intent is to be inferred, if possible, solely from the written provisions of the contract."  *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 821–22 (1990) (citing Cal. Civ. Code § 1636).  Accordingly, reference to extrinsic evidence is barred when the terms of a policy are clear and unambiguous.  *Id.*  "Extrinsic evidence may only be used to support a reasonable construction of ambiguous language."  *Madera Grp., LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 545 F. Supp. 3d 820, 831 (C.D. Cal. 2021).  "[E]xtrinsic evidence . . . cannot be used to substantiate unexpressed intention and thereby vary clear and explicit contract provisions."  *Com. & Indus. Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal. App. 4th 739, 746 (1999).

Here, Caesarstone contends that a "'*pro rata*' approach to allocation [should] appl[y] to determine which Policies should pay which portions of Caesarstone's defense costs and damages resulting from the Underlying Lawsuits."  (FAC ¶ 41.) Caesarstone further alleges that "the Carriers have been applying a *pro rata*

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

- 20 -

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

allocation by Carrier to the defense costs Caesarstone has thus far incurred in the Underlying Lawsuits" and that "the Carriers have split their shares evenly between the triggered Policies, regardless of the time of the risk." (*Id.* at ¶¶ 43-44.)[9] Caesarstone further contends that "under a *pro rata* allocation, Courts do not apply Non-Cumulation Clauses to limit the ratable portion of coverage applicable to each Policy." (*Id.* at ¶ 49.)  Thus, Caesarstone concludes that the "Carriers' purported application of such provisions is inconsistent with and irreconcilable with the pro rata allocation scheme the Carriers adopted and operated under for years." (*Id.*)

The sum of this is that Caesarstone invites the Court to rely on extrinsic evidence – the insurers' alleged "*pro rata*" defense cost share arrangement – to vary the plain and unambiguous Deemer Clause, which operates as a non-cumulation clause.  The Court should decline this invitation.  As noted above, a court may not use extrinsic evidence to vary clear and unambiguous policy language.  There is no ambiguity in the Deemer Clause here.  It is not subject to any "reasonable construction" besides its plain text: all progressive bodily injury is deemed to have occurred in the first policy period and is subject to a single per-occurrence limit.

Even accepting Caesarstone's allegations as true, Caesarstone has only pleaded the existence of a collateral agreement – to which Caesarstone is not even a party – among its insurers to handle the payment of Caesarstone's defense costs.  In other words, this alleged agreement among the insurers is for Caesarstone's own benefit.  This alleged agreement also post-dates the negotiation, underwriting, sale, delivery and acceptance of the Policies by several years and cannot be probative of the parties' intent at the time of contracting.  It would be a bizarre outcome entirely contrary to settled law if Caesarstone – again, which is not a party to this alleged agreement – could use this agreement to modify the Policies.

---

[9] For purposes of this motion, Aspen accepts these allegations as true.  However, Aspen reserves its rights to contest the merits of these allegations.

- 21 -

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

Furthermore, Caesarstone's argument makes little sense on its face.  If all of the carriers' policies have deemer, anti-stacking or non-cumulation clauses, then it stands to reason that each carrier will only have a single triggered policy.  It therefore is entirely reasonable and consistent that the carriers would apply a *pro rata* agreement among themselves.

In summary, judgment on the pleadings is proper here because the policy language "unambiguously negates beyond reasonable controversy the construction alleged in the body of the complaint."  *Palacin v. Allstate Ins. Co.*, 119 Cal. App. 4th 855, 862 (2004).  The Court should grant Aspen's motion and disregard Caesarstone's reliance on extrinsic evidence.

## V.    CONCLUSION

For the foregoing reasons, Aspen is entitled to partial judgment on the pleadings, and the Court should enter judgment for Aspen on Count IV of its Counterclaim, declaring that any coverage Aspen may owe under the Policies for the Claims is limited to Aspen's first policy period and a single per occurrence limit.

Dated: February 27, 2026          Respectfully submitted,

                                  DENTONS US LLP


                                  By: */s/ Jonathan D. Henry*
                                      Jonathan D. Henry (admitted pro hac vice)

                                  Attorneys for Defendant and Counterclaimant
                                  ASPEN SPECIALTY INSURANCE COMPANY
                                  only with respect to policies
                                  ERAHAQL17, EXAHAQM17, ERAHAQL18,
                                  EXAHAQM18, ERAHAQL19 and EXAHAQM19

- 22 -

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

CLYDE & CO US LLP


By: */s/ Alexander E. Potente*
    Alexander E. Potente

Attorneys for Defendant and Counterclaimant
ASPEN SPECIALTY INSURANCE COMPANY
only with respect to policies
ERAHAQL20, EXAHAQM20, EXAHAQM21,
EXAHAQM22 and EXAHAQM23

- 23 -

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel for record for Defendant and Counterclaimant Aspen Specialty Insurance Company, certifies that this Memorandum of Points and Authorities contains 4,871 words, which complies with the word limit of Local Rule 11-6.1.

Dated: February 27, 2026          By:    */s/ Jonathan D. Henry*
                                         Jonathan D. Henry

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4

In accordance with Civil Local Rule 5-4.3.4, the undersigned attests that all signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.

Dated: February 27, 2026          By:    */s/ Jonathan D. Henry*
                                         Jonathan D. Henry

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

- 24 -

ASPEN'S MOTION FOR JUDGMENT ON THE PLEADINGS

**Additional Counsel**

STEPHEN A. WATKINS (SBN 205175)
stephen.watkins@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
P +1 213 623 9300
F +1 213 623 9924

JONATHAN D. HENRY (admitted pro hac vice)
jonathan.henry@dentons.com
JAMES P. MCGANN (admitted pro hac vice)
james.mcgann@dentons.com
DENTONS US LLP
101 JFK Parkway
Short Hills, NJ 07078
P +1 973 912 7100
F +1 973 912 7199

Attorneys for Defendant and Counter-Claimant
Aspen Specialty Insurance Company
only with respect to policies
ERAHAQL17, EXAHAQM17, ERAHAQL18,
EXAHAQM18, ERAHAQL19 and EXAHAQM19

David M. Rhodes (SBN 214493)
david.rhodes@clydeco.us
CLYDE & CO US LLP
150 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801

Attorneys for Defendant and Counter-Claimant
Aspen Specialty Insurance Company
only with respect to policies
ERAHAQL20, EXAHAQM20, EXAHAQM21
EXAHAQM22 and EXAHAQM23

DENTONS US LLP
1999 HARRISON STREET
SUITE 1210
OAKLAND, CA 94612
415 882 5000

- 25 -