**VENABLE LLP**
Ken D. Kronstadt (SBN 259996)
  kdkronstadt@venable.com
Bryan J. Weintrop (SBN 307416)
  bjweintrop@venable.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone:   310.229.9900
Facsimile:   310.229.9901

**K&L GATES LLP**
Kevin S. Asfour (SBN 228993)
  Kevin.Asfour@klgates.com
Frederick J. Giordano (*pro hac vice pending*)
  Frederic.Giordano@klgates.com
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone:  310.552.5000
Facsimile:   310.552.5001

Attorneys for Plaintiff and Counterdefendant
CAESARSTONE USA, INC.,
f/k/a U.S. QUARTZ PRODUCTS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAESARSTONE USA, INC., f/k/a U.S. QUARTZ PRODUCTS, INC.<br><br>Plaintiff,<br><br>v.<br><br>ALLIED WORLD ASSURANCE COMPANY (US) INC.; AMERICAN FIRE AND CASUALTY COMPANY; ASPEN SPECIALTY INSURANCE COMPANY; COLONY INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; CONTINENTAL INSURANCE COMPANY; GOLDEN EAGLE INSURANCE CORPORATION; HARTFORD CASUALTY INSURANCE COMPANY; NAVIGATORS SPECIALTY INSURANCE COMPANY; PEERLESS INSURANCE | Case No. 2:25-cv-09582-MRA-MAA<br><br>Assigned for All Purposes To:<br>Hon. Mónica Ramírez Almadani<br><br>**PLAINTIFF AND COUNTERDEFENDANT CAESARSTONE USA, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS I & III OF DEFENDANT AND COUNTERCLAIMANT ASPEN SPECIALTY INSURANCE COMPANY'S COUNTERCLAIM**<br><br>**JURY TRIAL DEMANDED**<br><br>Hearing Information:<br>Date: April 14, 2026<br>Time: 10:00 a.m.<br>Courtroom: 9B |

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

CAESARSTONE USA, INC.'S MEMORANDUM IN SUPPORT
OF MOTION FOR JUDGMENT ON THE PLEADINGS

COMPANY; VALLEY FORGE INSURANCE COMPANY; WAUSAU BUSINESS INSURANCE COMPANY; and DOES 1-15

    Defendant.

Action Filed:      July 10, 2025

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 14, 2026 at 10:00 a.m., in Courtroom 9B of the above-captioned Court located at 411 West 4th Street, Santa Ana, CA 92701, Plaintiff and Counterdefendant Caesarstone USA, Inc. ("Caesarstone") will and hereby does move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Counts I and III asserted by Defendant and Counterclaimant Aspen Specialty Insurance Company ("Aspen") in its Counterclaim.

Judgment should be entered in Caesarstone's favor as to Counts I and III of Aspen's Counterclaim because, based solely on the matters plead in the Counterclaim and subject to judicial notice: (1) these claims are barred by the applicable statute of limitations; (2) Aspen has waived its right to assert these claims based on its conduct which is inconsistent with its assertion of its alleged rights; and (3) the doctrine of laches bars these claims because Aspen unreasonably delayed in asserting them. Further, Counts I and III should be dismissed with prejudice because these claims cannot be cured by amendment.

This motion is based on this Notice, the Memorandum of Points and Authorities below, the pleadings on file, Caesarstone's request for judicial notice, and such other matters as the Court may consider.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 30, 2026, at which Caesarstone and Aspen thoroughly

-1-

discussed the substance and potential resolution of the filed motion by videoconference.

Dated:  February 27, 2026                    **VENABLE LLP**

                                             /S/ Ken D. Kronstadt
                                        By:  Ken D. Kronstadt
                                             Bryan J. Weintrop


                                             **K&L GATES**


                                             /S/ Kevin S. Asfour
                                        By:  Kevin S. Asfour
                                             Frederic J. Giordano

                                             *Attorneys for Plaintiff*
                                             CAESARSTONE USA, INC., f/k/a
                                             U.S. QUARTZ PRODUCTS, INC.

-2-

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

**TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ...................................................................................................1

II.     FACTS ALLEGED AND SUBJECT TO JUDICIAL NOTICE ...................4

        A.      Caesarstone Purchases Primary And Excess Policies From Aspen..............................................................................................................4

        B.      Aspen Alleges That Caesarstone's Insurance Applications Contained Multiple Representations That Were False When Made............................................................................................................4

        C.      Caesarstone Tenders An Underlying Claim To Aspen In March 2020, But Aspen Delays Over Four Years Before Conducting An Investigation Into The Purported Falsity Of Caesarstone's Application. ..........................................................................................6

III.    LEGAL STANDARD .........................................................................................9

IV.     LEGAL ARGUMENT .......................................................................................9

        A.      Counts I And III Of The Counterclaim Are Barred By The Statute Of Limitations.....................................................................................9

                i.      Aspen's Claims Are Time Barred Pursuant To CCP Section 337(c)(3).........................................................................10

                ii.     The Delayed Discovery Rule Does Not Apply. ......................12

                iii.    Even If The Discovery Rule Applied, Aspen Was On Inquiry Notice Of Its Claims More Than Four Years Before The Counterclaim Was Filed........................................13

        B.      Aspen Waived Any Right To Rescission Or Reimbursement............15

        C.      Aspen's Claims Are Barred By Laches ..............................................16

                i.      Aspen's Delay Was Unreasonable as a Matter of Law...........17

                ii.     The Prejudice To Caesarstone Is Apparent From The Pleadings.................................................................................18

-i-

CAESARSTONE USA, INC.'S MEMORANDUM IN SUPPORT
OF MOTION FOR JUDGMENT ON THE PLEADINGS

V.    LEAVE TO AMEND SHOULD BE DENIED ............................................. 18

VI.    CONCLUSION ....................................................................................... 19

-ii-

CAESARSTONE USA, INC.'S MEMORANDUM IN SUPPORT
OF MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 9

*Beckett v. Kavnar Mfg. Co.*,
  49 Cal. 2d 695 (1958) ............................................................................................. 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 9

*Casiano v. Deutsche Bank Nat'l Trust Co.*,
  2011 WL 836659 (C.D. Cal. Feb. 28, 2011) ........................................................... 9

*DeSoto v. Yellow Freight Sys.*,
  957 F.2d 655 (9th Cir. 1992) ................................................................................. 18

*Diversified Paratransit Inc., v. Checkmate Staffing, Inc*,
  359 Fed. App'x 736 (9th Cir. 2009) ...................................................................... 18

*DuBeck v. Cal. Physicians' Serv.*,
  234 Cal. App. 4th 1254 (2015) .......................................................................... 3, 15

*Estrada v. Alvarez*,
  38 Cal. 2d 386 (1952) ............................................................................................ 17

*Gerling Glob. Reinsurance Corp. of Am. v. Fremont Gen. Corp.*,
  No. CV0505454CASPJWX, 2007 WL 9757934 (C.D. Cal. Jan. 10,
  2007), *aff'd*, 287 F. App'x 3 (9th Cir. 2008) ....................................................... 15

*Gill v. Rich*,
  128 Cal. App. 4th 1254 (2005) .............................................................................. 15

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ................................................................................... 9

*Jarrow Formulas v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ................................................................................. 17

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988) .......................................................................................... 13

-iii-

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

*King v. Los Angeles Cnty. Fair Ass'n,*
70 Cal. App. 2d 592 (1945) ...............................................................................17

*Klin v. Cloudera, Inc.,*
121 F.4th 1180 (9th Cir. 2024) ..........................................................................19

*Landrum v. Tyson,*
2011 U.S. Dist. LEXIS 165225 (C.D. Cal. May 16, 2011) ......................3, 16, 17

*Leobardo Segura-Meza, et al. v. Agoura Hills Marble and Granite,*
*Inc., et al,*
Los Angeles County Superior Court Case No. 22STCV38729 ...........7, 8, 16, 17

*Mitchell v. Deutsche Bank Nat'l Trust Co.,*
714 Fed. App'x. 739 (9th Cir. 2018) .................................................................10

*Nautilus Insurance Co. v. Dreamworks Construction,*
2025 U.S. Dist. LEXIS 220852 (C.D. Cal. Sept. 26, 2025)...........2, 3, 10, 11, 12

*Oakley, Inc. v. Executive Risk Specialty Ins. Co.,*
2012 WL 12898804 (C.D. Cal. June 27, 2012).....................................11, 12, 13

*Reddy v. Litton Indus.,*
912 F.2d 291 (9th Cir. 1990) .............................................................................18

*Reyes-Gonzalez v. Aaroha Radiant Marble & Granite Slabs, et al.,*
Case No. 22STCV31907 ( Los Angeles County Superior Court) .................8, 17

*Rutherford v. Prudential Ins. Co. of Am.,*
234 Cal. App. 2d 719 (1st Dist. 1965)................................................................16

*U.S. v. Ritchie,*
342 F.3d 903 (9th Cir. 2003) ...............................................................................9

*Victor Gonzalez, et al. v. ADB Global, et al.,*
Case No. 21STCV06984 (Los Angeles County Superior Court) .........................7

*Victor Murguia, et al. v. 3M Company, et al.,*
Case No. CC-20-00515-B (Dallas County Court) ....................................6, 7, 14

**Statutes**

California Code of Civil Procedure § 337(c)(3).........................................2, 10, 12

-iv-

Code of Civil Procedure § 337(c)............................................................3, 10, 11, 13

CPP Section 337(c)(2) .............................................................................................. 12

Insurance Code § 359 ...................................................................................2, 10, 11

**Court Rules**

L.R. 11–6.2 ...............................................................................................................20

L.R. 11-6.1 ...............................................................................................................20

Rule 12(b)(6) .......................................................................................................9, 11

Rule 12(c) ................................................................................................................... 9

## I.   INTRODUCTION

Caesarstone USA, Inc. f/k/a U.S. Quartz Products, Inc. ("Caesarstone") initiated this Action in order to obtain a determination as to its entitlement to insurance benefits which it is rightfully owed from its various insurance carriers in connection with numerous lawsuits filed against it alleging bodily injury purportedly caused by exposure to silica and other allegedly harmful substances while working with Caesarstone's natural and artificial stone products (the "Underlying Claims"). In blatant retaliation for Caesarstone filing this Action, Defendant and Counterclaimant Aspen Specialty Insurance Company ("Aspen") filed a Counterclaim seeking, *inter alia*: (1) a sweeping declaration of its purported right to rescission of each of the insurance policies it issued to Caesarstone covering the time period from June 2017-April 2024, due to alleged misrepresentations made by Caesarstone in its insurance applications; and (2) a declaration of its alleged right to reimbursement for all coverage costs it has paid to date in connection with the Underlying Claims due to its purported right to rescission of the underlying policies based on Caesarstone's purported misrepresentations in its insurance application.

Aspen's Counterclaim is a transparent and meritless attempt to shirk its coverage obligations via specious claims of alleged "misrepresentations."  At the appropriate time, Caesarstone looks forward to demonstrating that Aspen's 15-month "investigation" that began on August 7, 2024 (*see* ECF 41 (Counterclaim) ¶ 108)[1], consisted of little more than collecting allegations by numerous plaintiffs against Caesarstone in the Underlying Claims – which were tendered to Aspen *years* before August 2024 – and "discovering" publicly-available facts and filings, many of which were also mentioned in certain complaints in the Underlying Claims

---

[1] Aspen filed its Answer and Counterclaim as a single document.  *See* ECF 41.  All cites herein to numbered paragraphs in ECF No. 41 are to the numbered paragraphs of Aspen's Counterclaim, which begins on page 20 of ECF 41.

-1-

CAESARSTONE USA, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

tendered to Aspen long ago.  More importantly, for *this* Motion, however, Aspen's claims for rescission are untimely, regardless of their merit.

Aspen's requests for rescission and reimbursement – which are asserted in Counts I and III of the Counterclaim, respectively – are premised on alleged misrepresentations contained in Caesarstone's applications for its underlying policies which were submitted in or around May 2017.  Importantly, the Counterclaim is clear that Aspen contends these purported misrepresentations were false at the time they were made.  Moreover, Aspen admits that the first of the Underlying Claims was tendered to it by Caesarstone on March 30, 2020, *over five and a half years before the Counterclaim was filed on November 7, 2025*.  Nonetheless, Aspen issued subsequent renewals and/or policies covering Caesarstone through June 2024 and has continued to pay defense and indemnity costs in connection with the Underlying Claims to date.

Aspen's rescission and reimbursement claims under Counts I and III are barred by the applicable statute of limitations under California Code of Civil Procedure section 337(c)(3) (hereinafter "CCP Section 337(c)(3)") because Aspen seeks rescission of the underlying policies under Insurance Code section 359 ("Section 359").  *See* ECF 41 (Counterclaim) ¶ 121.  Pursuant to CCP Section 337(c)(3), where a claim for rescission is made under Section 359, the four-year statute of limitations begins to run at such time that the representation presenting the basis for rescission becomes false.  Critically, Aspen expressly alleges that Caesarstone's representations regarding matters pertaining to known risks from exposure to silica and other harmful substances were false at the time its insurance policy applications were submitted in May 2017.  As such, the statute of limitations as to Aspen's rescission and reimbursement claims expired as of May 2021.  Moreover, and as this Court held in *Nautilus Insurance Co. v. Dreamworks Construction*,  2025 U.S. Dist. LEXIS 220852, at *20 (C.D. Cal. Sept. 26, 2025)

-2-

(herein after "*Nautilus*"), because the final sentence of CCP Section 337(c) applies to Aspen's counterclaims at issue, the delayed discovery rule does not apply.

Furthermore, even if the delayed discovery rule applied, Counts I and III of the Counterclaim are still time barred. Aspen alleges facts demonstrating that it was on inquiry notice regarding the falsity of the alleged misrepresentations by Caesarstone regarding the latter's alleged knowledge of the risks of exposure to silica and other harmful substances presented by its products because Aspen acknowledges that Caesarstone first tendered an Underlying Claim to it on March 30, 2020. Assuming, *arguendo*, the delayed discovery rule applied, which it does not, the statute of limitations on Counts I and III of Aspen's Counterclaim expired no later than March 30, 2024.

As independent grounds to grant Caesarstone's motion, Counts I and III are barred by the doctrines of waiver and laches due to Aspen's conduct inconsistent with its purported rights to rescission and reimbursement and its undue delay in asserting such purported rights. Under well-established California law, an insurer will be deemed to waive its rights to rescission where it acts inconsistently with a purported right to rescind a policy. *See, e.g., DuBeck v. Cal. Physicians' Serv.*, 234 Cal. App. 4th 1254, 1265 (2015). Similarly, the doctrine of laches bars potential claims where a party has unreasonably delayed in asserting a claimed right. *See, e.g., Landrum v. Tyson*, 2011 U.S. Dist. LEXIS 165225, at *2-3 (C.D. Cal. May 16, 2011). Here, Aspen delayed *eight years* after policy inception, *over five and a half years* after receiving the first tender putting it on notice of claims against Caesarstone allegedly caused by bodily injury from exposure to silica and other harmful substances, and *at least five years* after beginning to pay millions of dollars in defense and settlement costs and issuing new policies to Caesarstone before asserting rescission and reimbursement claims before this Court. Aspen's conduct

-3-

is inconsistent with its right to rescission, and/or its failure to assert the rescission claim in a reasonable timeframe bar Counts I and III as a matter of law.

Given Aspen's fatal admissions as to the expiration of the applicable statute of limitations, and its conduct constituting waiver and/or laches, Counts I and III should be dismissed with prejudice because they cannot be cured by amendment.

## II.    FACTS ALLEGED AND SUBJECT TO JUDICIAL NOTICE

### A.    Caesarstone Purchases Primary And Excess Policies From Aspen.

Aspen issued primary and first layer excess insurance policies (the "First Layer Policies") to Caesarstone effective June 16, 2017.  ECF 41 (Counterclaim) ¶ 18.  Caesarstone renewed the First Layer Policies on an annual basis until 2021.  *Id.* Aspen also issued a second layer excess policy to Caesarstone with a $10,000,000 aggregate limit excess of a $1,000,000 primary policy and a $10,000,000 excess policy, each issued by another insurer, Allied World Assurance Company. Caesarstone renewed the second layer excess policy (the "Second Layer Excess Policies") until 2024 (together with the Primary Policies and the First Layer Excess Policies, the "Policies").  *Id*. ¶ 19.

### B.    Aspen Alleges That Caesarstone's Insurance Applications Contained Multiple Representations That Were False When Made.

Aspen alleges that Caesarstone made various misrepresentations during the application and underwriting process for the Primary Policies issued in or around May 2017.  Specifically, Aspen alleges that "the misrepresentation or concealment of any material fact at issue in this action commenced *during the policy application and underwriting process* when Caesarstone sought coverage from Aspen for its risk of exposure to silica-related bodily injury claims."[2]  *Id*. ¶ 32 (emphasis added).  In

---

[2] While not pertinent to this motion, Caesarstone disagrees that the Underlying Claims are solely "silica-related"; rather they allege exposure to various harmful substances, one of which is silica.  Any references herein to "silica-related" claims

-4-

this regard, Aspen claims that on or about May 18, 2017, Caesarstone's then-CFO provided responses to questions that "were material to, and on which Aspen justifiably relied in making, its underwriting decisions, including whether to insure the risk." *Id.* ¶ 34. Aspen's counterclaims detail various alleged "misrepresentations and/or concealments [that] were material to Aspen's evaluation of that risk[.]" *Id.* ¶ 44.

> Specifically, Aspen alleges that Caesarstone:
>
> (a) represented that it was unaware of any fact or circumstance that would reasonably be expected to result in "silica-related bodily injury claims";
>
> (b) represented that it was unaware of any "silica-related bodily injury claims," other than the one such prior claim that had since been closed;
>
> (c) reasonably led Aspen to believe, particularly in conjunction with Caesarstone's other representations alleged that Caesarstone had taken steps to protect itself from such "silica-related bodily injury claims"; and
>
> (d) deprived Aspen of information that would have allowed it to more meaningfully and accurately evaluate the true risk that Caesarstone's business created with respect to "silica-related bodily injury claims."

*Id.* Aspen further alleges that these alleged "misrepresentations and/or concealments … were repeated in each subsequent application for renewal of the Primary Policies." *Id.* ¶ 46. In other words, the alleged misrepresentations were allegedly repeated in 2018, 2019, and 2020, the years in which Aspen issued Primary Policies to Caesarstone. *Id.* ¶ 20.

---

relate to Aspen's allegations and should not be deemed an agreement that the Underlying Claims relate only, or principally, to silica.

-5-

CAESARSTONE USA, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

According to Aspen, if "Caesarstone had not made these misrepresentations and/or had not concealed the true responsive information, as further alleged below, then Aspen would not have agreed to insure Caesarstone's risk for silica-related bodily injury claims or would have issued insurance on materially different terms." *Id.* ¶ 45. Further, Aspen contends that it purportedly "learned of information showing that, *as of 2017*, Caesarstone had extensive knowledge that its products created a significant risk of silica-related bodily injury claims." *Id.* ¶ 68 (emphasis added). In support of its assertion that Caesarstone purportedly knew the representations in its application were false when made, Aspen points to public statements that Caesarstone Ltd. (Caesarstone's corporate parent) made in 2012 and 2015,[3] including in a 2012 Securities and Exchange Commission ("SEC") filing; lawsuits filed against Caesarstone's parent company in Israel; and an "admi[ssion] to Australian regulators." *Id.* ¶¶ 70-71, 73.

**C.     Caesarstone Tenders An Underlying Claim To Aspen In March 2020, But Aspen Delays Over Four Years Before Conducting An Investigation Into The Purported Falsity Of Caesarstone's Application.**

Caesarstone began tendering silica-related claims to Aspen in March 2020. *Id.* ¶ 83. Aspen began to defend the claims subject to a reservation of rights. *Id.* ¶ 84. The first lawsuit tendered by Caesarstone to Aspen was the action captioned as *Victor Murguia, et al. v. 3M Company, et al.*, Case No. CC-20-00515-B (Dallas County Court), filed on January 27, 2020. *See* Request for Judicial Notice ("RJN"),

---

[3] The "statements" by Caesarstone included that, "[c]onsistent with the experience of other companies involved in silica-related litigation, there may be an increase in the number of asserted claims against us." Aspen alleges that Caesarstone Ltd. further stated that "[s]uch claims could be asserted by claimants in different jurisdictions, including Israel, the United States, Canada, Australia and other markets where our products are distributed and sold and could result in significant legal expenses and damages." *Id.* ¶ 74.

-6-

Ex. 1.  As pertinent here, the *Murguia* complaint alleged that the plaintiff was harmed because he "was wrongfully exposed to and inhaled and/or ingested silica fibers, dust, and/or particles, an inherently dangerous toxic substance . . . [through] Caesarstone supplied by Caesarstone USA, Inc." *Id*. ¶¶ 42, 42(a).  The *Murguia* Complaint further alleged that despite Caesarstone purportedly having "been in possession of medical and scientific data, literature and test reports which clearly indicated that the inhalation of silica dust, fibers and/or particles resulting from the ordinary and foreseeable use of Defendants' Products was unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly" that it "maliciously . . . withheld, concealed and suppressed" that information. *Id*. ¶¶ 65(a), 65(b).

Nonetheless, Aspen did not conduct any  investigation into the alleged falsity of Caesarstone's representations in its insurance applications regarding its knowledge as to the potential risk of exposure for silica-related bodily injury claims at any time proximate to when the *Murguia* claim was tendered.  *See generally* ECF 41 (Counterclaim).  Nor did Aspen investigate when at least one additional Underlying Claim was filed and tendered in or around mid-2021, *Victor Gonzalez, et al. v. ADB Global, et al*., Case No. 21STCV06984 (Los Angeles County Superior Court), filed on February 23, 2021.  *See* RJN, Ex. 2.  Aspen also did not investigate when the First Amended Complaint in the *Segura-Meza* Suit was filed in March 2023.  *See* RJN, Ex. 3 (*Leobardo Segura-Meza, et al. v. Agoura Hills Marble and Granite, Inc., et al*, Case No. 22STCV38729 (Los Angeles County Superior Court), Case No. 22STCV38729, filed on December 13, 2022 (the "*Segura-Meza* Suit").)  The *Segura Meza* Suit contains many of the same allegations on which Aspen relies in its Counterclaim, including allegations regarding, *inter alia*: (1) Caesarstone's alleged knowledge, before 2017, that its engineered stone products containing silica and other allegedly harmful substances posed a health risk; (2) lawsuits brought

against Caesarstone Limited prior to 2017; (3) Caesarstone's regulatory disclosures acknowledging silica-related risks and potential future litigation; (4) Caesarstone's alleged knowledge that commonly recommended safety measures were inadequate; and (5) the Chest article, titled, "Caesarstone Silicosis," allegedly documenting silicosis among artificial stone workers heavily exposed to engineered stone products. *Compare* RJN, Ex. 3 (*Segura-Meza* Suit) ¶¶ 146-151, 160-161, 483-486 *with* ECF 41 (Counterclaim) ¶¶ 52-54, 68-80. The Second Amended Complaint in the *Reyes-Gonzalez* Suit in April 2023 made the same allegations as the *Segura-Meza* Suit. *See* RJN, Ex. 4 (Reyes-Gonzalez Suit) ¶¶ 111-116, 136-137, 528-531.

Rather, Aspen alleges that "[i]t was not until after August 7, 2024, when the jury returned its verdict in the *Reyes-Gonzalez* Suit [the first of the silica-related claims asserted against Caesarstone to go to trial in the United States, *Reyes-Gonzalez v. Aaroha Radiant Marble & Granite Slabs, et al.,* , Case No. 22STCV31907 ( Los Angeles County Superior Court), filed on April 14, 2023 (the "Reyes-Gonzalez Suit")], that Aspen could have first been on notice of Caesarstone's potential misrepresentation and concealment of material facts in the Application and underwriting process." ECF 41 (Counterclaim) ¶ 108. However, nowhere in the Counterclaim does Aspen allege the verdict in the *Reyes-Gonalez* Suit was the earliest date on which it could have been notice of the alleged misrepresentations in Caesarstone's applications (let alone explain why it could not have known to investigate any earlier). *See id.*, *generally*. Aspen alleges that it did not first perform an investigation into Caesarstone's purported misrepresentations and concealment in its application until after the August 7, 2024, verdict in the *Reyes-Gonzales* suit, i.e., more than four years after the first Underlying Claim was tendered by Caesarstone. *Id.* ¶ 109.

/ / /

/ / /

-8-

CAESARSTONE USA, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

## III.    LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is proper where, taking all well-pleaded allegations as true, the moving party is entitled to judgment as a matter of law. *Casiano v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 836659, at *2 (C.D. Cal. Feb. 28, 2011) (citation omitted). The standard mirrors Rule 12(b)(6), and dismissal is appropriate where an affirmative defense, such as the statute of limitations appears on the face of the pleadings. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). The Supreme Court has held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is well-established that "[a] court may . . . consider certain materials–documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice–without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

## IV.    LEGAL ARGUMENT

### A.    <u>Counts I And III Of The Counterclaim Are Barred By The Statute Of Limitations.</u>

Count I of Aspen's Counterclaim seeks rescission of the policies it issued to Caesarstone due to purported misrepresentations contained in Caesarstone's applications it submitted in advance of the Primary Policies being issued between 2017 and 2020. ECF 41 (Counterclaim) ¶¶ 20, 46, 116-121. Count III of Aspen's Counterclaim seeks a declaration of Aspen's right to reimbursement for amounts it has paid in connection with the Underlying Claims based on the purported misrepresentations in Caesarstone's insurance application which purportedly render the policies subject to rescission. *Id*. ¶ 133. Importantly, the Counterclaim makes

CAESARSTONE USA, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

clear that Aspen is alleging that the purported misrepresentations contained in Caesarstone's applications and during the underwriting process in the 2017-2020 timeframe which form the basis for its right to rescission were false at the time they were made.  *See, e.g., id*. ¶ 32 (alleging that "the misrepresentation or concealment of any material fact at issue in this action ***commenced during the policy application and underwriting process*** when Caesarstone sought coverage from Aspen…") (emphasis added); *id*. ¶ 46; *see also id*. ¶ 68 ("Aspen learned of information showing that, ***as of 2017***, Caesarstone had extensive knowledge that its products created a significant risk of silica-related bodily injury claims.") (emphasis added). Accordingly, Counts I and III are barred by the applicable statute of limitations because they are premised on alleged misrepresentations which occurred more than four years prior to Aspen bringing the instant claim.[4]

        i.     <u>Aspen's Claims Are Time Barred Pursuant To CCP Section 337(c)(3)</u>.

CCP Section 337(c) establishes a four-year statute of limitations for rescission claims.  As this Court explained in *Nautilus*, CCP Section 337(c) "sets forth three different accrual dates" for when the four-year statute of limitations begins to run, stating:

> "[1] The time begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred. [2] Where the ground for rescission is fraud or mistake, the time shall not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake. [3] *Where the ground for rescission is misrepresentation under Section 359 of the Insurance Code, the time shall not begin to run until the representation becomes false.*"

2025 U.S. Dist. LEXIS 220852, at *20 (emphasis added).

---

[4] Aspen's Counts I and III are for declaratory relief on the grounds of rescission. Declaratory relief claims are likewise time-barred where they are derivative of an underlying claim subject to a statute of limitations.  *See, e.g., Mitchell v. Deutsche Bank Nat'l Trust Co.*, 714 Fed. App'x. 739, 741 (9th Cir. 2018).

-10-

As was the case in *Nautilus*, the instant action is for the rescission of insurance policies based on alleged misrepresentations under Insurance Code Section 359. *See* ECF 41 (Counterclaim) ¶¶ 116, 121. Accordingly, the last sentence of CCP Section 337(c) applies, and the statute of limitations began to run when the "representation becomes false." *Id.*, *see also Oakley, Inc. v. Executive Risk Specialty Ins. Co.*, 2012 WL 12898804 (C.D. Cal. June 27, 2012) (granting Rule 12(b)(6) motion to dismiss insurer's counterclaim based on application of final sentence of CCP Section 337(c) where allegedly false statements were false when made).

Aspen's Counterclaim is replete with allegations claiming that Caesarstone's statements in its insurance application were false when made, *i.e.*, when Caesarstone first submitted its insurance application in May 2017, and for subsequent applications in 2018-2020. *See, e.g.*, ECF 41 (Counterclaim) ¶ 32 (alleging that misrepresentations occurred "during the policy application and underwriting process"); *id.* ¶ 34 (citing purportedly false statements made by Caesarstone's CFO on May 18, 2017); *id.* ¶ 39 (alleging that Caesarstone misrepresented and concealed knowingly false facts in its May 2017 application); *id.* ¶ 45 (alleging the concealment of false information contained in Caesarstone's May 2017 application); *id.* ¶ 46 (alleging that "[t]he misrepresentations and/or concealments alleged above, in connection with the Application, were *continuing in nature* as they were repeated in each subsequent application for renewal of the Primary Policies.") (emphasis added); *id.* ¶ 68 ("Aspen learned of information showing that, **as of 2017**, Caesarstone had extensive knowledge that its products created a significant risk of silica-related bodily injury claims.") (emphasis added). Accordingly, on the face of the Counterclaim, there is no question that California's four-year statute of limitations bars Aspen's claims for rescission and reimbursement due to alleged misrepresentations because it alleges the purported misrepresentations made by

-11-

Caesarstone were false at the time they were communicated in May 2017 and repeated in 2018-2020.

ii.    The Delayed Discovery Rule Does Not Apply.

In tacit acknowledgment that its claims would be barred by the statute of limitations in the absence of equitable tolling, Aspen attempts to invoke the delayed discovery rule by alleging that it was "not until after August 7, 2024" when the jury returned its verdict in the Reyes-Gonzalez Suit that it was put on notice of the purported falsity of Caesarstone's representations and began an investigation.  ECF 41 (Counterclaim) ¶¶ 108-109.  This theory fails as a matter of law because the delayed discovery rule does not apply to Aspen's claims for rescission and corresponding reimbursement.

As this Court held in *Nautilus*, because Aspen's rescission claim seeks rescission of an insurance policy, it is subject to the limitations period set forth in the final sentence of CCP Section 337(c)(3), not any other period set forth therein. *See Nautilus*, 2025 U.S. Dist. LEXIS 220852, at *24 ("Because the California Code of Civil Procedure specifically provides for the accrual date for Nautilus' rescission claims based on misrepresentation under the Insurance Code, Nautilus cannot invoke a different provision of the statute providing a different, more favorable accrual date. Thus, the four-year statute of limitations on Nautilus' rescission claims began to run at the time that 'the representation bec[ame] false,' not when the facts constituting the misrepresentation were discovered by Nautilus."); *see Oakley*, 2012 WL 12898804, at *4–6 (rejecting insurer's argument that its counterclaim for rescission should be deemed a breach of warranty claim accruing once the insurer was injured by the breach).  In doing so, this Court further rejected the plaintiff's attempt to invoke the delayed discovery rule embodied under CCP Section 337(c)(2) because "[t]o apply the accrual period that Nautilus urges (*i.e.*, from the discovery of the misrepresentations) would run afoul of the plain text of the statute and render the

-12-

final sentence in Code of Civil Procedure § 337(c) superfluous." *See also Oakley*, 2012 WL 12898804, at *4–6 (deeming insurer's counterclaim a claim for rescission of an insurance policy to which the delayed discovery rule does not apply to toll the limitations period).

Accordingly, the delayed discovery rule cannot revive Aspen's stale counterclaims.

> iii.    Even If The Discovery Rule Applied, Aspen Was On Inquiry Notice Of Its Claims More Than Four Years Before The Counterclaim Was Filed.

Even if the discovery rule applied, Aspen's own allegations make clear that Aspen was on inquiry notice of the facts forming the basis for Counts I and III of the Counterclaim well before four years prior to the date Aspen filed the Counterclaim. Under well-established California law, a plaintiff is deemed to have discovered a claim when he or she suspects, or *should* suspect, an injury that was caused by wrongdoing. *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988). A person has reason to suspect an injury and wrongdoing where he or she has "notice or information of circumstances to put a reasonable person on inquiry." *Id*. at 1110–11. A plaintiff is "held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." *Id*. at 1109. A plaintiff need not be aware of the specific 'facts' necessary to establish the claim. *Id.* at 1111. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id*. Here, the Counterclaim makes clear that Aspen was apprised of facts sufficient to place it on inquiry notice as of no later than March 30, 2020, and that an investigation of sources available to Aspen at that time would have revealed the factual basis for Aspen's Counts I and III.

-13-

Specifically, Aspen alleges that Caesarstone first tendered an Underlying Claim (the *Murguia* complaint) on March 30, 2020, and that Aspen began to defend that lawsuit subject to a reservation of rights. ECF 41 (Counterclaim) ¶¶ 83-84. Importantly, the *Murguia* complaint alleged bodily injury caused to the plaintiff as a result of exposure to silica and other harmful substances contained in Caesarstone's products and that Caesarstone had purportedly wrongfully concealed information about known dangers presented by use of its products; i.e., some of the very same facts which Aspen claims it could not have learned any earlier than after it commenced its August 2024 investigation. *Compare* RJN, Ex. 1 ¶¶ 65(a), 65(b) *with* ECF 41 (Counterclaim) ¶ 9 ("based on the information now known to Aspen, Caesarstone knew that its business operations – including but not limited to its distribution of products containing a dangerously high percentage of silica without adequate warnings or safety measures – were highly likely to cause silica bodily injury claims, like the [Underlying] Claims now at issue.") As such, Aspen was unquestionably in possession of "notice or information of circumstances to put a reasonable person on inquiry" as to the alleged falsity of Caesarstone's representations during the underwriting process and in its insurance applications regarding its knowledge as to the potential risk of exposure for bodily injury claims from exposure to silica and other harmful substances. Moreover, even if the *Murguia* complaint were not enough to place Aspen on inquiry notice, Aspen was tendered at least one additional Underlying Claim in or around mid-2021, also more than four years prior to filing the Counterclaim. *See* RJN, Ex. 2.

Significantly, Aspen's own pleading admits that an investigation conducted as of March 2020 would have revealed the facts forming the basis for its assertions that Caesarstone made alleged misrepresentations during the underwriting process and in its May 2017 and subsequent insurance applications. Indeed, Aspen's Counterclaim is replete with references to publicly available documents published

-14-

well before March 2020 which it relies upon in asserting Caesarstone misrepresented information during the underwriting process and in its May 2017 and subsequent insurance applications. *See* ECF 41(Counterclaim) ¶¶ 69-79. *See also Gerling Glob. Reinsurance Corp. of Am. v. Fremont Gen. Corp.*, No. CV0505454CASPJWX, 2007 WL 9757934, at *9 (C.D. Cal. Jan. 10, 2007), *aff'd*, 287 F. App'x 3 (9th Cir. 2008) (claims time barred because the plaintiff was aware of published articles regarding improper conduct by defendant more than four years prior to filing the complaint).

Based on the foregoing, Aspen's Counterclaim establishes: (1) Aspen was aware of facts placing it on inquiry notice of the alleged falsity of statements during the underwriting process and in Caesarstone's May 2017 insurance application (and subsequent applications) as of no later than March 30, 2020 when the first Underlying Claim was tendered; and (2) an investigation by Aspen at that time would have revealed the publicly available sources cited by the Counterclaim as purported proof Caesarstone had made alleged misrepresentations in its May 2017 insurance application (and 2018-2020 applications) and during the underwriting process regarding those applications. As such, the delayed discovery rule is of no assistance to Aspen and Counts I and III of the Counterclaim are time-barred.

**B.    Aspen Waived Any Right To Rescission Or Reimbursement.**

"An insurance company will be deemed to waive any ground which would otherwise entitle it to rescind a policy or treat it as forfeited when, despite knowledge of the facts giving it the option, it impliedly recognizes the continuing effect of the policy." *DuBeck v. Cal. Physicians' Serv.*, 234 Cal. App. 4th 1254, 1264–68 (2015) (citations omitted) (finding insurer waived right to rescind as matter of law). Waiver occurs where a party, with knowledge of facts giving rise to a right, intentionally relinquishes that right through conduct inconsistent with its assertion. *See, e.g.*, *Gill v. Rich*, 128 Cal. App. 4th 1254, 1264 (2005) ("Parties may not 'derive

-15-

all possible benefit from the transaction and then claim the right to rescind.'") (citation omitted).

Aspen's conduct in defending and settling Underlying Claims after 2020; renewing the Policies providing coverage for Caesarstone through 2024; and particularly continuing to defend the Underlying Claims after the *Segura-Meza* Suit in March 2023 and subsequent lawsuits made allegations similar to those in its Counterclaim, constitutes a waiver of its right to rescission. By continuing to perform under the Policies despite having information that would have put a reasonably prudent insurer on notice to investigate potential grounds for rescission, Aspen impliedly recognized the continuing effect of the Policies. *See, e.g.*, *Rutherford v. Prudential Ins. Co. of Am.*, 234 Cal. App. 2d 719, 735 (1st Dist. 1965) (where insurer had information indicating responses were untrue before it issued the policy, insurer waived right to additional information by failing to investigate). This conduct is inherently inconsistent with rescission, which requires *prompt* action upon discovery of grounds for rescission. Accordingly, Aspen waived any right to rescind, and judgment on Aspen's Counterclaim for rescission and reimbursement is warranted.

### C.    Aspen's Claims Are Barred By Laches

Aspen's counterclaim for rescission is an equitable remedy, and therefore it is also subject to the equitable defense of laches. Laches applies where a party unreasonably delays in asserting a claim and that delay prejudices the opposing party. *Landrum v. Tyson*, 2011 U.S. Dist. LEXIS 165225, at *2-3 (C.D. Cal. May 16, 2011). "A determination of whether a party exercised unreasonable delay in filing suit consists of two steps. First, we assess the length of delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action. Second, we decide whether the plaintiff's delay was reasonable. The reasonableness of the plaintiff's delay is considered in light of the time allotted

by the analogous limitations period.  We also consider whether the plaintiff has proffered a legitimate excuse for its delay." *Id.* at *3 (quoting *Jarrow Formulas v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002)); *Landrum*, 2011 U.S. Dist. LEXIS 165225, at *2 ("A complaint may be dismissed for failure to state a claim where the defense of laches is apparent from the face of the complaint.").

          i.      <u>Aspen's Delay Was Unreasonable as a Matter of Law.</u>

Here, Aspen unreasonably delayed in seeking rescission and its delay was unreasonable as a matter of law.  Indeed, prior to asserting its claims for rescission and associated reimbursement, Aspen waited:

- Over 8 years after the 2017 inception of the first policy Aspen issued to Caesarstone, despite it now contending that Caesarstone's application contained known-misrepresentations that were false at the time they were made.  ECF 41 (Counterclaim) ¶ 32;

- Over 5.5 years after the initial tender and defense of the first Underlying Claim in March 2020.  *Id.* ¶¶ 83-84;

- Over 1.5 years after it received the First Amended Complaint in the *Segura-Meza* Suit and Second Amended Complaint in the *Reyes-Gonzales* Suit in March and April 2023.  *See id.* ¶ 108; *see also supra* II.C; and

- More than 15-months after the jury verdict was awarded in the *Reyes-Gonzalez* Suit in August 2024 and Aspen conducted its purported investigation.  ECF 41 ¶¶ 108-109.

No further factual development is required to find this delay unreasonable. *See, e.g.*, *Estrada v. Alvarez,* 38 Cal. 2d 386, 390–91 (1952); *King v. Los Angeles Cnty. Fair Ass'n,* 70 Cal. App. 2d 592, 597 (1945) (appellate court affirming demurrer based on unreasonable delay); *Beckett v. Kavnar Mfg. Co.*, 49 Cal. 2d 695,

-17-

700 (1958) (rescission barred where there was a 4-month delay between receiving information upon which rescission could be based and acting to rescind).

      ii.    <u>The Prejudice To Caesarstone Is Apparent From The Pleadings.</u>

Aspen's failure to act promptly has prejudiced Caesarstone, who has relied on the existence of coverage during this period.  First and foremost, Aspen's delay prejudiced Caesarstone because, had Aspen informed Caesarstone in March 2020 that it intended to rescind, Caesarstone could have obtained policies from a different insurer thereafter.  Aspen's delay has further prejudiced Caesarstone by potentially depriving it of defense coverage for the Underlying Claims after years of defending Caesarstone; depriving it of certainty regarding coverage; allowing Aspen to control the defense while preserving a later claw-back theory; and through diverting Caesarstone's resources from concentrating on defense of the Underlying Claims.

Equitable relief such as rescission is unavailable where, as here, the plaintiff slept on its rights.  *Diversified Paratransit Inc., v. Checkmate Staffing, Inc*, 359 Fed. App'x 736, 739 (9th Cir. 2009) ("Moreover, a party seeking rescission must invoke that remedy 'promptly' upon discovering grounds justifying rescission.").  Aspen's counterclaims amount to impermissible post-loss underwriting.  Because the unreasonable delay is apparent from the face of the pleading, laches can be decided on this motion to dismiss.

## V.    LEAVE TO AMEND SHOULD BE DENIED

"A district court does not err in denying leave to amend where the amendment would be futile."  *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992) (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990)).  Because Aspen's claims are barred by the statute of limitations and the doctrines of waiver and/or laches for the reasons set forth above, amendment would be futile.  No additional allegations can change the dates, conduct, or delay Aspen has already pleaded.  *See,*

-18-

CAESARSTONE USA, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

*e.g.*, *Klin v. Cloudera, Inc.*, 121 F.4th 1180, 1190 (9th Cir. 2024) (affirming denial of leave to amend where doing so would be futile) (collecting cases).

## VI.    CONCLUSION

Caesarstone respectfully asks that this Court grant judgment in its favor on Aspen's Counterclaims (Counts I and III).

Dated:  February 27, 2026

**VENABLE LLP**

By:    /S/ Ken D. Kronstadt
         Ken D. Kronstadt
         Bryan J. Weintrop

**K&L GATES**

By:    /S/ Kevin S. Asfour
         Kevin S. Asfour
         Frederic J. Giordano

*Attorneys for Plaintiff*
CAESARSTONE USA, INC., f/k/a
U.S. QUARTZ PRODUCTS, INC.

-19-

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11–6.2</u>

The undersigned, counsel of record for Plaintiff and Counterdefendant Caesarstone USA, Inc., certifies that this Motion for Judgment on the Pleadings contains 5,559 words, which complies with the word limit of L.R. 11-6.1.

Executed February 27, 2026.

/s/ Ken D. Kronstadt
Ken D. Kronstadt

-20-